MITCHELLS SALON & DAY SPA, INC.,[1] Appellee,

v.

BUSTLE, Appellant.

[Cite as *Mitchells Salon & Day Spa, Inc. v. Bustle*,
187 Ohio App.3d 336, 2010-Ohio-1880.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–0900349.

Decided April 30, 2010.

1.  Appellee's name is spelled "Mitchell's" and "Mitchells" alternately throughout the pleadings. We have chosen the spelling indicated on the cover of the trial court's journal entries.

Honerlaw & Honerlaw Co., L.P.A., and Joseph S. Honerlaw, for appellee.

Law Offices of Daniel J. Donnellon, L.L.C., and Daniel J. Donnellon, for appellant.

---

HILDEBRANDT, Judge.

{¶ 1} Defendant-appellant Michael E. Bustle appeals the trial court's judgment finding him in contempt of a court order. The court's order had adopted an agreed entry enjoining Bustle from providing hairstyling services to clients of his former employer, plaintiff-appellee Mitchells Salon & Day Spa, Inc. ("Mitchells"), for one year. For the following reasons, we affirm.

{¶ 2} Mitchells operates high-end beauty salons throughout the greater Cincinnati area. Bustle was hired by Mitchells in February 1995, soon after he had graduated from cosmetology school. At that time, Bustle had no clients. Bustle signed an employment agreement that contained a noncompete clause. That clause prohibited Bustle, for a period of one year following his cessation of employment with Mitchells, from rendering "any hair care treatment, hair care styling, or related services * * * to any persons who are or were customers of [Mitchells] and with whom [Bustle] had personal contact during the time of [Bustle's] employment." Bustle resigned from Mitchells on August 10, 2007, after 12½ years of working there. Bustle then opened his own hairstyling business by renting a booth at Salon Concepts in Montgomery, Ohio.

{¶ 3} Because Mitchells noticed that most of the clients Bustle had previously served at Mitchells had not returned for hair services after Bustle quit, Mitchells

suspected that Bustle was violating the noncompete agreement. Mitchells sued Bustle in January 2008 in an effort to enforce the noncompete agreement by seeking a temporary restraining order ("TRO") and a permanent injunction. On February 21, 2008, following a hearing that has not been transcribed for our review, the trial court journalized a TRO prohibiting Bustle from providing "beauty services" to any person to whom he had previously provided services while employed at Mitchells.

{¶ 4} Following the TRO hearing, Mitchells and Bustle were able to negotiate a settlement under which Bustle agreed to be enjoined for one year beginning February 21, 2008, from providing "any hair care treatment, hair care styling, or related services, directly or indirectly" to any person who is or was a customer of Mitchells and with whom Bustle had had personal contact during his employment with Mitchells. Essentially, Bustle agreed to abide by the noncompete clause in his contract. Bustle also agreed to execute letters, prepared by Mitchells, to send to Bustle's former clients, informing them that he could no longer provide hairstyling services for them and recommending another stylist at Mitchells. Apparently, Mitchells offered these customers a discount or free service if they returned to Mitchells after receipt of the letter. The court accepted an agreed entry, signed by both parties, as an order of the court in March 2008.

{¶ 5} After the letters signed by Bustle were mailed, Mitchells again noticed that many of Bustle's former clients had not returned despite the fact that free services had been offered. In September 2009, Mitchells then hired a private-investigation firm, Business Intelligence ("BI"), to conduct surveillance to determine if Bustle was violating the agreed entry. As a result of the surveillance report, Mitchells filed a motion for contempt on December 10, 2008, claiming that Bustle was routinely violating the agreed entry.

{¶ 6} At a preliminary hearing on the contempt motion, the trial court indicated that it would treat this case as one involving civil contempt and would not incarcerate Bustle if it was determined that he had violated the agreed entry. With that assurance, Bustle complied with Mitchells' discovery request and sent a list of clients for which Bustle had provided hair-care services during the injunction period and who were his former Mitchells' clients.

{¶ 7} At the April 20, 2009 contempt hearing, Bustle admitted that he had violated the noncompete agreement. He also admitted that while it was never his intent, he had also violated the TRO and the court's agreed judgment entry. He testified that he had trouble saying "no" to his former clients. During discovery, Bustle had provided Mitchells with a list of over 180 names of former Mitchells' clients for whom Bustle had provided multiple hairstyling services from August 2007 through March 2009. But Bustle claimed that 63 of those individuals were clients whom he had procured on his own while employed at Mitchells and were

not clients obtained by Mitchells' efforts or advertising campaigns. Thus, Bustle argued that he was not prohibited from serving those clients. Bustle testified that he had made a profit of $37,471.50, after costs, from former Mitchells' clients from August 2007 through March 2009.

{¶ 8} Mitchells presented the testimony of James Simon, a licensed private investigator, who stated that BI had spent over 290 hours performing investigative work for the contempt hearing. The fees for its services, which included surveillance and general investigative work (checking over 418 license plates against a Mitchells customer list), amounted to $52,620.67. During BI's investigation, it recovered a partially shredded calendar from Bustle's trash. The general manager of Mitchells, Michael Batchelor, testified that the calendar included Bustle's appointments from May 9, 2008, to June 3, 2008, and that there were 39 former Mitchells' clients listed on the calendar. Batchelor testified that those 39 names were not included on the list of names that Bustle had produced during discovery. Bustle explained that those names were not included because he had been using a paper calendar until he was able to use his Blackberry device to handle appointments, and because some appointments were accidentally not transferred to his Blackberry or QuickBooks program.

{¶ 9} Batchelor testified that, due to Bustle's violation of the TRO and the agreed entry, Mitchells had lost profits of $74,101.15. Batchelor reached this figure by reviewing Bustle's profits from the last year he had worked at Mitchells. From that figure, Mitchells subtracted costs and Bustle's commission to reach the amount of $74,101.15.

{¶ 10} Finally, Mitchells' trial counsel testified that Mitchells' legal fees from the time of the agreed entry through the contempt hearing amounted to $15,801.04.

{¶ 11} On May 1, 2009, the trial court found Bustle in contempt of court and ordered him to purge his contempt by paying $139,521 to Mitchells for attorney fees, investigative fees, and lost profits. The trial court also ordered that Bustle "fully comply with the provisions of [the noncompete clause] of the Agreed Judgment Entry entered herein March 25, 2008 from the date of this Order until April 19, 2010." Thus, Bustle was prohibited from providing hairstyling services to any person to whom he had previously provided services while employed at Mitchells for 11 months. This appeal followed.

{¶ 12} In the first of his four assignments of error, Bustle contends that the trial court erred by finding him in contempt of the trial court's order entitled "Agreed Judgment Entry." Citing Civ.R. 65, which governs permanent injunctions, Bustle argues that the injunction contained in the agreed entry was not valid because it did not state the reasons for its issuance. Therefore, Bustle

maintains that he could not have been found in contempt for violating the injunction. We disagree.

{¶ 13} Bustle, while represented by counsel, voluntarily entered into an agreement that contained an injunction prohibiting him from providing hairstyling services to individuals to whom he had provided services while employed at Mitchells. "Where a party voluntarily enters into an agreed entry or stipulation resolving an issue of contention, that party cannot later complain about the terms of the agreement, absent evidence of fraud, mistake, or misrepresentation." [2] Bustle has not argued any of these exceptions. Furthermore, the record does not indicate that Bustle had objected to or appealed from the agreed entry.

{¶ 14} Because Bustle cannot now complain about something that he had agreed to, we hold that the trial court did not err in adopting the entry as its own. Further, given that Bustle admitted to providing hairstyling services for former Mitchells' clients during the injunction period, we hold that the trial court did not abuse its discretion in holding Bustle in contempt for willfully disobeying the agreed entry. The first assignment of error is overruled.

{¶ 15} In his second assignment of error, Bustle argues that "the trial court erred by failing to take any measures to allow the alleged contemnor to 'purge the contempt' before awarding extraordinary sanctions." Citing *Carroll v. Detty*, Bustle contends that in civil contempt cases, the contemnor must be given an opportunity to purge the contempt before sanctions are ordered.[3] In *Carroll*, the appellate court held that the trial court had abused its discretion in sending the contemnor to jail without giving him the opportunity to purge the contempt by paying his child-support arrearages.

{¶ 16} *Carroll* does not apply here. Bustle was not threatened with a jail-term sanction. Instead, he was ordered to disgorge the profits that he had earned as a result of disobeying the agreed entry.

{¶ 17} At the heart of this assignment of error is Bustle's belief that Mitchells waited too long prior to bringing the contempt action. We disagree. The agreed entry was not journalized until March 2008. After that time, letters were mailed to Bustle's former clients advising them that he could no longer provide services to them and recommending a hairstylist at Mitchells. After those letters went out, Mitchells needed to wait a reasonable amount of time to determine if any clients would return to Mitchells. After noticing that hardly any clients had

---

**2.** *Doan v. Doan* (Oct. 2, 1997), 1st Dist. No. C–960932, 1997 WL 602881, *2, citing *Popovic v. Popovic* (1975), 45 Ohio App.2d 57, 74 O.O.2d 94, 341 N.E.2d 341.

**3.** See *Carroll v. Detty* (1996), 113 Ohio App.3d 708, 681 N.E.2d 1383.

returned, Mitchells hired a private-investigation firm. The investigation and resulting report then took several months to complete. Ultimately, Mitchells filed its contempt action in December 2008. We cannot say that this was an unreasonable amount of time to bring this action under the circumstances. The second assignment of error is overruled.

{¶ 18} In his third assignment of error, Bustle contends that the trial court erred by awarding damages that did not have proper evidentiary support. We disagree.

{¶ 19} With respect to the attorney fees, Mitchells' trial counsel submitted an itemized list of the legal work performed and testified that the legal fees were reasonable for the work performed and that the work performed was necessary to the litigation.[4] Likewise, Swift of BI testified to the reasonableness of the hours spent on surveillance and fees. Furthermore, Bustle stipulated to Swift's credentials as a private investigator. Given that Bustle had the opportunity to cross-examine both of these witnesses and that Bustle did not request any discovery concerning these issues prior to trial, we cannot say that the trial court abused its discretion in admitting this testimony.[5]

{¶ 20} With respect to lost profits, Bustle argues that Mitchells' figure was based on a summary that was admitted at trial in contravention of Evid.R. 1006. Evid.R 1006 governs the admission of a summary involving "voluminous documents." There were no voluminous documents in this case, and Evid.R. 1006 did not apply.

{¶ 21} Here, Batchelor testified that Mitchells had lost $74,101.15 in profits due to Bustle's actions. In reaching that figure, Batchelor took into account Bustle's commissions and costs. Batchelor also testified that Mitchell's figure was more valid than the figure Bustle presented, because Bustle had left off over 36 clients from the list of clients that he produced in discovery. Accordingly, we cannot say that the trial court abused its discretion in admitting the profit analysis performed by Mitchells regarding its lost profits for the 18 months that Bustle had violated the TRO and the agreed entry. Accordingly, the third assignment of error is overruled.

---

4. See *Groza–Vance v. Vance*, 162 Ohio App.3d 510, 2005-Ohio-3815, 834 N.E.2d 15; *Heuber v. Heuber*, 12th Dist. Nos. CA2006–01–004, CA2006–02–019, and CA2006–02–020, 2007-Ohio-913, 2007 WL 646253, ¶ 48.

5. *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus ("The admission or exclusion of relevant evidence rests within the sound discretion of the trial court").

{¶ 22} In his final assignment of error, Bustle argues that the trial court improperly awarded Mitchells a double remedy by extending the agreed entry for another year and by ordering that Bustle disgorge his profits earned while violating the agreed entry. We are unpersuaded.

{¶ 23} This is a contempt action. We review contempt sanctions under an abuse-of-discretion standard.[6] A court of common pleas has inherent power to punish a refusal to comply with its orders by imposing appropriate sanctions.[7] Appropriate sanctions in a civil contempt proceeding are those that (1) coerce compliance with the court's previous order or (2) compensate the complainant for losses sustained by the contemnor's disobedience of the order.[8] When, as here, a party violates a noncompete clause that has, in essence, been incorporated into a court's order, the court may order the violator to disgorge profits and to establish compliance with the clause.[9]

{¶ 24} This is exactly what the trial court did here. The trial court required Bustle to disgorge his profits and then ordered Bustle to comply with the noncompete clause, which was incorporated into the trial court's agreed entry, for the period of time that Bustle had disobeyed the TRO and the agreed entry. These sanctions essentially put the parties in the position they would have been in if Bustle had abided by his original agreement for a period of one year not to serve clients to whom he had provided hairstyling services while employed at Mitchells. The extension of the agreed entry for an additional 11 months compensates Mitchells for its future loss of profits. The whole point of the noncompete clause was to give Mitchells the opportunity to retain a client base that it had built through its investment of time, money, and training. The extension gives Mitchells the benefit of its bargain. Accordingly, we cannot say that the trial court abused its discretion in ordering Bustle to disgorge his profits and in extending the agreed entry for an additional 11 months. The fourth assignment of error is overruled.

{¶ 25} Therefore, the judgment of the trial court is affirmed.

Judgment affirmed.

---

6. *State ex rel. Ventrone v. Birkel* (1981), 65 Ohio St.2d 10, 11, 19 O.O.3d 191, 417 N.E.2d 1249.

7. *Olmsted Twp. v. Riolo* (1988), 49 Ohio App.3d 114, 550 N.E.2d 507.

8. *Walton v. Davis* (June 26, 1997), 10th Dist. No. 96APF11–1503, 1997 WL 358860.

9. See, generally, *Kenneth Hair Salons & Day Spas, Inc. v. Boltinghouse* (June 18, 2007), 10th Dist. No. 06CVH03–3553.

SUNDERMANN, J., concurs.

HENDON, J., concurs separately.

Hendon, Judge, concurring separately.

{¶ 26} The resolution of this case on appeal requires this court to review the trial court's imposition of a monetary sanction as well as the extension, for approximately a year, of the noncompete portion of the original agreed order. In effect, on its face, it would appear that Mitchells will be the beneficiary of a double recovery for the violations that formed the basis for the finding of contempt.

{¶ 27} Perhaps a better disposition when the trial court made its finding of contempt in April 2009 would have been to allow Mitchells to elect which remedy it felt would provide better compensation for the violation of the noncompete provision—monetary damages or an extension of the agreed order, which was intended to provide Mitchells with an opportunity to market to and retain the clients who had previously been served by Bustle while he was employed there.

{¶ 28} In this case, I concur that the award of damages was well within the discretion of the court, and since I can find no way to undo the extended year of noncompetition, I must somewhat reluctantly concur in the whole judgment.