[Cite as *ITS Fin., L.L.C. v. Gebre*, 2014-Ohio-2205.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| ITS FINANCIAL, LLC | : | |
| | : | Appellate Case Nos. 25416 |
| Plaintiff-Appellee | : | 25492 |
| | : | |
| v. | : | Trial Court Case No. 11-CV-8852 |
| | : | |
| GIRMAI GEBRE, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellants | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 23rd day of May, 2014.

. . . . . . . . . . .

JAMES G. ABERNATHY, Atty. Reg. #0086819, and Todd E. Bryant, Atty. Reg. #0072738, 51 Plum Street, Suite 260, Beavercreek, Ohio 45440
      Attorneys for Plaintiff-Appellee, ITS Financial, LLC

THOMAS M. GREEN, Atty. Reg. #0016361, Green & Green, Lawyers, 800 Performance Place, 109 North Main Street, Dayton, Ohio 45402
      Attorney for Defendant-Appellant, Girmai Gebre

GREGORY S. PAGE, Atty. Reg. #0065264, Gregory S. Page Co., LPA, 7501 Paragon Road, Dayton, Ohio 45459
      Attorney for Defendants-Appellees, Star Tax, LLC and Tedros Gebremedhin

. . . . . . . . . . . .

FAIN, J.

{¶ 1}      Defendant-appellant Girmai Gebre appeals from an order finding him in

contempt and awarding sanctions for his violations of a temporary restraining order and a preliminary injunction. Gebre contends that the trial court erred in entering the TRO and preliminary injunction. He also contends that there is no evidence in the record to support either the finding of contempt or the amount of sanctions.

{¶ 2} We conclude that the trial court did not err in entering either the temporary restraining order or the preliminary injunction. We further conclude that the order finding him in contempt and awarding sanctions is supported by the evidence in the record. Accordingly, the order of the trial court is Affirmed.

## I. ITS Obtains Injunctive Relief to Prevent Gebre from
## Competing in Violation of his Franchise Agreements with ITS

{¶ 3} ITS Financial, LLC is an Ohio company doing business as "Instant Tax Service." In 2008, Gebre entered into eight franchise agreements with ITS whereby he purchased eight franchise territories located in Memphis, Tennessee for the purpose of operating tax preparation services under the ITS business name of Instant Tax Service. Section 8 of the franchise agreements, which are identical except for location, contains a covenant not to compete, which provides that Gebre will not:

(i) own, maintain, operate, engage in, franchise or license, or have any direct or indirect controlling or non-controlling interest as an owner – whether of record, beneficially, or otherwise – in a Competitive Business (defined below), wherever located or operating * * *

(ii) be, or perform services as, a director, officer, manager, employee,

consultant, representative, or agent for a Competitive Business, wherever located or opening;

(iii) divert or attempt to divert any actual or potential business or customer of the Franchised Office to a Competitive Business; or

(iv) engage in any other activity which might injure the good will of the Proprietary Marks and Franchised System.

**{¶ 4}** The franchise agreements were terminated by ITS in September 2011. Thereafter, ITS filed a motion for a temporary restraining order and a preliminary injunction to prevent Gebre from engaging in any competitive tax preparation business. A TRO was entered on December 12, 2011, providing as follows:

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that a Temporary Restraining Order enjoining Defendant and each of his officers, agents, servants, employees, successors or assigns, any person acting on behalf of Defendant, and any person in active concert or participation with Defendant, directly or indirectly, from:

1. Opening or operating an Instant Tax Service office location; or

2. Diverting customers to any competitive tax preparation business; processing tax returns for retail customers; using signage with the Instant Tax Service name, brand, website, or trademark; identifying or associating with Instant Tax Service in a way that is misleading or deceptive to the public; or otherwise competing against Plaintiff as defined by Section 8 of the Franchise Agreements, including advertising or marketing such competing businesses;

3. Opening or operating any tax preparation business (filing or offering to file a federal or state tax return for a customer in exchange for a fee) in the following geographic areas:

a) Zip codes 38107, 38105, 38127, 38114, 38132, 38131, 38116, 38109, 38106, 38111, 38152, 72301;

b) Within a 10 mile radius of any offices located in the above zip codes; and

c) Within a 5 mile radius of any Instant Tax Service office in existence as of the date of this Order

4. Otherwise utilizing the trademark "Instant Tax Service" in signage, print material, or advertising.

{¶ 5} A hearing on the preliminary injunction was set for December 22. Gebre appeared at the hearing without counsel. His request for a continuance was granted, with the proviso that the TRO would remain in effect during the continuance.

## II.   ITS Claims Gebre Has Violated the TRO, and

## Later the Preliminary Injunction, and Seeks Relief

{¶ 6} On December 27, 2011, ITS filed a motion to show cause seeking an order holding Gebre in contempt for continuing to operate a tax preparation business in violation of the TRO.

{¶ 7} A hearing on the preliminary injunction was held on January 20, 2012. Gebre did not appear, but his counsel appeared and submitted Gebre's affidavit, in which Gebre averred that he had not taken any steps to compete with ITS and had not violated the terms of Section 8

of the Franchise Agreements. The trial court entered a preliminary injunction on January 27, 2012. The injunction was identical to the TRO, except that it did not contain the language regarding competition in violation of Section 8 of the Franchise. ITS filed a "replevin" bond in the amount of $100,000 on February 17.

{¶ 8}　A hearing on the contempt motion was held on March 30, 2012. Gebre was not present, but his counsel was. By decision and entry dated April 6, the trial court found Gebre in contempt.

{¶ 9}　On May 4, 2012, a hearing began on the issue of sanctions for contempt. Due to outstanding discovery that Gebre had not produced, the hearing was continued to August 23. On August 23, Gebre did not personally appear. ITS presented its evidence on sanctions and Gebre's counsel requested a continuance for the limited purpose of permitting Gebre to testify. The hearing was continued to September 13, 2012.[1] Again, only Gebre's counsel appeared for the continued hearing, and another Gebre affidavit was submitted. In the affidavit, Gebre averred that he "worked as a consultant for bookkeeping for Star Tax Service, LLC ('Star Tax') for the 2011 tax season which occurred in January through April of 2012." He further averred that he was not a "member" of Star Tax, but he was "a signatory on its accounts."

{¶ 10}　The trial court entered its September 13, 2012 order, finding that Gebre owned and operated a competitive company named Star Tax, LLC in violation of the TRO and preliminary injunction. The trial court further found that Star Tax had earned $374,315.07 in profit as a result of violating the restraining order and injunction. The trial court awarded ITS

---

[1] The trial judge noted that she would, reluctantly, cancel her plans to attend a conference, in order to be able to timely reschedule the continued hearing around the conflicts of both attorneys.

the sum of $300,000 in sanctions.

{¶ 11}   On September 19, the trial court entered an order of default against Gebre and awarded ITS the sum of $120,990.48 in damages for breach of contract.   The September 19 order also entered a permanent injunction against Gebre utilizing the same language as in the preliminary injunction.

{¶ 12}   Gebre appealed (CA 25416) from both the September 13 and September 19 orders.   He then moved in the trial court for a stay of execution pending appeal, which the trial court overruled.   Gebre then appealed (CA 25492) from the order overruling his motion for a stay pending appeal.   These two appeals were consolidated by decision and entry dated February 25, 2013.

{¶ 13}   On December 12, 2012, Gebre moved in this court for a stay of execution pending appeal.   By order dated December 28, 2012, this court noted that the September 13 sanction order had already been executed upon when Star Tax transferred $300,000 to ITS.   We granted a stay of execution with regard to the September 19 order rendering damages of $120,99.48, but denied the stay of the permanent injunction.

{¶ 14}   Gebre also moved to remand the default judgment portion of the case – the September 19, 2012 order.   We granted this motion.   Subsequently, the trial court vacated the default judgment.   Thus, these consolidated appeals are from the order imposing sanctions and the trial court's order denying the motion to stay execution pending appeal.

### III.   The Evidence in the Record Supports the TRO and Preliminary Injunction

{¶ 15}  Gebre's First Assignment of Error states as follows:

THE TRIAL COURT ERRED WHEN IT GRANTED ITS'S MOTION

FOR THE TRO AND SUBSEQUENT PRELIMINARY INJUNCTION.

{¶ 16}  Gebre contends that the trial court erred by entering the TRO, because there was no evidence that ITS would suffer "immediate and irreparable injury, loss or damage * * * before [Gebre] or his attorney could be heard in opposition."   He further contends that the trial court erred by entering the preliminary injunction, because ITS failed to show that it has suffered irreparable harm, that it can succeed on the merits, that it will suffer greater harm without the injunction, or that it lacks an adequate remedy in the form of money damages.

{¶ 17}   ITS argues that because Gebre did not timely appeal from either the TRO or the preliminary injunction, he cannot now contest those orders.   But "[w]here a non-appealable interlocutory order results in a judgment of contempt, including fine or imprisonment, such a judgment is a final and appealable order and presents to the appellate court for review the propriety of the interlocutory order which is the underlying basis for the contempt adjudication." *Smith v. Chester Tp. Bd. of Trustees*, 60 Ohio St.2d 13, 396 N.E.2d 743 (1979), paragraph one of the syllabus.   Thus, we may review the entry of the TRO and the preliminary injunction as part of our review of the contempt and sanctions orders, from which this appeal is taken.

{¶ 18}  We turn first to the issue of the TRO.  Pursuant to Civ.R. 65(A), a temporary restraining order may be issued when it clearly appears from facts set forth in a verified complaint or affidavit that the applicant will suffer "immediate and irreparable injury, loss or damage * * * before the adverse party or his attorney can be heard in opposition."

{¶ 19}  ITS filed a verified complaint and motion for the TRO on December 12, 2011.

Gebre argues that because ITS admitted in its motion "that the tax return filing season would have started on January 14, 2012[,]" there "was no immediate injury to be prevented at the time ITS requested the TRO." He further argues that ITS admitted that it could calculate the amount of money it would have derived from Gebre.

{¶ 20} Gebre is correct that the motion notes that tax *filing* season begins January 14. However, the motion and complaint went on to state that "tax preparation offices are currently preparing for the upcoming season, which includes the purchasing of advertising, arrangement of offices, hiring of employees, local marketing event, and the posting of store displays and signage. These preparations, especially the posting of signage and advertising and local marketing events, will begin attracting customer attention prior to tax filing season." Furthermore, the verified complaint alleged that Gebre was "diverting" Instant Tax customers to a "side business" owned by Gebre and his family members without the customers' knowledge that they were not utilizing Instant Tax. The complaint went on to state that Gebre was availing himself of the "benefits of ITS' brand, reputation, customer familiarity, trademarks, and trade secrets, as well as other confidential and proprietary information." The complaint alleged that Gebre was using ITS's "national advertising campaign without contributing to the cost." Further, the complaint alleged that Gebre's tactics would "capture nearly all of Instant Tax's prior year customers, using data and signage which will mislead the public into thinking ITS endorses, supplies, and supports Defendants' stores. Defendant will then obtain an unfair competitive advantage, which ultimately will allow them to keep the customers they initially obtained through Instant Tax's brand name and advertising." Thus, we conclude that the verified complaint alleged facts from which the trial court could reasonably conclude that a TRO was appropriate.

{¶ 21} Gebre also argues that because the CEO of ITS testified, at the subsequent hearing on the preliminary injunction, that money damages could be calculated, the TRO was improper. The first problem with this argument is that the trial court did not have this testimony before it at the time the TRO was granted. Also, when the CEO was asked whether it is possible to put a precise number on the amount of damages, he replied "yeah, it's hard to put a number on something like that but I think it's just a system-wide issue." We conclude that this evidence is not inconsistent with ITS's need for an injunction. The evidence indicates that Gebre was using a software system that allowed him to hide revenue from ITS, which would render it impossible to calculate the full amount of the royalties that would have been due under the franchise agreement. Furthermore, the CEO also testified that beyond the amount of monies lost, Gebre's actions would result in the loss of trade secrets, goodwill and return customers.

{¶ 22} The trial court did not err in granting the TRO.

{¶ 23} We next turn to the preliminary injunction. In order to grant a preliminary injunction, a court must determine whether: (1) there is a substantial likelihood that plaintiff will prevail on the merits; (2) plaintiff will suffer irreparable injury if the injunction is not granted; (3) any third parties will be unjustifiably harmed if the injunction is granted; and (4) the public interest will be served by the injunction. *Vanguard Transp. Sys., Inc. v. Edwards Transfer & Storage Co.,* 109 Ohio App.3d 786, 790, 673 N.E.2d 182 (10th Dist.1996), citing *Valco Cincinnati, Inc. v. N & D Machining Serv., Inc.*, 24 Ohio St.3d 41, 492 N.E.2d 814 (1986). The party seeking the preliminary injunction must establish each of these elements by clear and convincing evidence. *Mead Corp., Diconix, Inc., Successor v. Lane,* 54 Ohio App.3d 59, 63, 560 N.E.2d 1319 (4th Dist.1988). "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the

allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *State v. Bluser*, 2d Dist. Montgomery No. 18856, 2002 WL 191567, * 1 (Feb. 8, 2002), citing *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954); *State v. Ingram*, 82 Ohio App.3d 341, 612 N.E.2d 454 (2d Dist.1992). "An appellate court will not reverse a trial court's decision to deny or grant a temporary restraining order or preliminary injunction absent an abuse of discretion." *TGR Enterprises, Inc. v. Kozhev*, 167 Ohio App.3d 29, 2006-Ohio-2915, 853 N.E.2d 739, ¶ 11 (2d Dist.).

**{¶ 24}** Gebre contends that ITS failed to demonstrate the first two elements cited above. He also contends that he will suffer greater harm than ITS because of the injunction.

**{¶ 25}** With regard to the element of substantial likelihood of prevailing, Gebre argues that his unrebutted testimony established that ITS had materially breached the franchise agreements, and was therefore not entitled to enforce them against him. Gebre did not appear at the preliminary injunction hearing to provide testimony and subject himself to cross-examination. His "testimony" consists of the following averment in his affidavit: "ITS failed to comply with the terms of the franchise agreements." A trial court is free to credit all, some or none of a witness's testimony. With nothing more in the record than a conclusory statement in an affidavit, and with no supporting proof, we conclude that the trial court did not abuse its discretion in giving little or no credit to this argument. This is especially true given that the testimony of the CEO of ITS was that while Gebre expressed dissatisfaction with the fees and royalties he was required to pay ITS, he never presented ITS with any claim that it breached the terms of the Franchise Agreements.

{¶ 26} Gebre next argues that ITS failed to demonstrate that it will suffer irreparable harm. In support, he again cites to the testimony of the CEO of ITS, set forth above, which Gebre claims establishes that money damages can be calculated. But there is a difference between the ability to calculate the amount of payments that would have been due to ITS from Gebre's franchise profits and the unquantifiable damages resulting from loss of customers, goodwill and trade secrets claimed by ITS. Also there is evidence in the record that Gebre had used a software system that permitted him to hide monies taken in, which indicates that the damages from lost royalties would not be completely ascertainable. There is also evidence in the record that if Gebre were permitted to breach the franchise agreements without consequence it would be difficult for ITS to sell other franchises within that market area, thereby resulting in lost revenue. Based upon this evidence, we again reject the argument that ITS would not suffer irreparable harm if injunctive relief were not available to it.

{¶ 27} Finally, Gebre contends that ITS would not suffer as great a harm by the denial of the preliminary injunction as he would suffer by the allowance of the injunction, and that the injunction is against public policy. In support, he argues that he will lose customers, which is contrary to the "general public policy encouraging free and fair business competition." Gebre is correct that inhibiting business competition is against general public policy. But as noted in the case he cites, a non-compete clause is enforceable if it is not injurious to the public, meaning that the non-compete clause does not limit the public's access to similar businesses. *UZ Engineered Products Co. v. Midwest Motor Supply Co., Inc.*, 147 Ohio App.3d 382, 2001-Ohio-8779, 77 N.E.2d 1068, ¶ 39 (10th Dist.). There is nothing in this record to establish that a preliminary injunction to enforce the ITS non-compete clause will cause injury to the public, because there is no evidence in the record that there are no other tax preparation businesses located in the

Memphis area. And although Gebre will not be able to garner any customers in the Memphis area covered by the franchise agreements for a period of two years, there is no evidence in the record to establish that he will suffer undue hardship as a result.

{¶ 28}   Gebre's First Assignment of Error is overruled.


**IV.   The Evidence in the Record Supports the Trial Court's Conclusion**

**that Gebre Violated the TRO and the Preliminary Injunction**

{¶ 29}   Gebre asserts the following for his Second Assignment of Error:

THE TRIAL COURT ERRED WHEN IT FOUND GEBRE IN CONTEMPT BECAUSE ITS FAILED TO PROVE A VIOLATION OF A COURT ORDER BY CLEAR AND CONVINCING EVIDENCE.

{¶ 30}   Gebre contends that the evidence does not support a finding of contempt.

{¶ 31}   Indirect contempt is conduct that takes place outside the presence of the court. *State v. Chavez-Juarez*, 185 Ohio App.3d 189, 2009-Ohio-6130, 923 N.E.2d 670, ¶ 41 (2d Dist.). Indirect contempt exists when an individual demonstrates "[d]isobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or an officer."   R.C. 2705.02. "In order to show a contempt, it is necessary to establish a valid court order, knowledge of the order, and violation of it."   *Arthur Young & Co. v. Kelly*, 68 Ohio App.3d 287, 295, 588 N.E.2d 233 (10th Dist.1990).   The contempt must be proved by clear and convincing evidence. *ConTex, Inc. v. Consolidated Technologies, Inc.*, 40 Ohio App.3d 94, 95, 531 N.E.2d 1353 (1st Dist.1988).   An appellate court will not reverse the decision of a lower court in a contempt proceeding absent an abuse of discretion.   *State ex rel. Ventrone v. Birkel*, 65 Ohio St.2d 10, 11,

417 N.E.2d 1249 (1981).

{¶ 32} ITS presented the testimony of Joseph Rinehart, who testified that he was a 28-year veteran of the FBI and had been working as a private investigator for one year. He testified that he was hired by ITS to observe three businesses in the Memphis area. He testified that he first observed the stores on January 4, 2012. One of the businesses, which appeared to be closed, had the name Instant Tax. The other two appeared to be operating, were in locations that were formerly ITS stores, and had signage with the name Star Tax Service. Rinehart testified that he observed the stores on several occasions. He went into one of the Star Tax stores and was told that the business could prepare his taxes. He also observed customers in the stores. Rinehart testified that he took photographs of a person he believed to be Gebre and he observed Gebre in one of the Star Tax stores. He observed Gebre come out of one store, converse with another individual, and then re-enter the store, continuing to walk around the inside during business hours. The CEO of ITS identified Gebre in the photographs. Gebre did not appear at the hearing, relying upon his affidavit submitted January 20, 2012, in which he averred that he had not used any Instant Tax signage, had "no stores in Memphis, Tennessee, and is not 'open and operating.' " ITS also presented evidence that Gebre, after the TRO was entered, called ITS's lawyer and told the lawyer that he had removed the Instant Tax signage from the storefronts. ITS introduced Gebre's answers to interrogatories, in which Gebre stated that he owned and operated tax preparation stores in the three locations observed by Rinehart, and had not transferred his business interests, leases or assets of the ITS franchises. The trial court found that Gebre had violated the court orders.

{¶ 33} We conclude that the trial court did not abuse its discretion. There is evidence

in the record to support the entry of a valid TRO and preliminary injunction. It is clear that Gebre was aware of the orders. Finally, the evidence demonstrates that Gebre had three Instant Tax locations, one of which was closed, but still had Instant Tax signage. The other two locations were former Instant Tax locations that had been operated by Gebre, and were currently operating as Star Tax stores. Individuals with sandwich boards were observed directing customers into the Star Tax stores. The incorporation documents for Star Tax indicate that a person alleged by ITS to be Gebre's brother is the owner of the businesses, which were incorporated approximately ten days after the TRO was issued. Gebre did not transfer any portion of his franchised businesses to any other individual or entity. Gebre was observed at one of the Star Tax stores. We conclude that there is competent, credible evidence that Gebre was acting in violation of the TRO and preliminary injunction.[2]

{¶ 34} Gebre's Second Assignment of Error is overruled.


**V. The Trial Court Did Not Abuse its Discretion in Awarding a Sanction**

**of $300,000, Representing Less than a Full Disgorgement**

**of the Profits Realized from the Violation of its Orders**

{¶ 35} Gebre's Third Assignment of Error is as follows:

THE TRIAL COURT ERRED WHEN IT AWARDED $300,000 IN SANCTIONS.

{¶ 36} Gebre contends that the evidence in the record does not support the amount the

---

[2] Interestingly, as noted above, Gebre's second affidavit, submitted after the contempt hearing, establishes his violation of the TRO; in it he avers that he consulted for Star Tax during the term of the TRO.

trial court awarded as a contempt sanction. He also argues that ITS did not post the proper bond following the issuance of the preliminary injunction.

{¶ 37} Sanctions for contempt are reviewed under the abuse of discretion standard. *Mitchells Salon & Day Spa, Inc. v. Bustle*, 187 Ohio App.3d 336, 2010-Ohio-1880, 931 N.E.2d 1172, ¶ 23 (1st Dist.). "Appropriate sanctions in a civil contempt proceeding are those that (1) coerce compliance with the court's previous order or (2) compensate the complainant for losses sustained by the contemnor's disobedience of the order. When, as here, a party violates a noncompete clause that has, in essence, been incorporated into a court's order, the court may order the violator to disgorge profits and to establish compliance with the clause." *Id. See also Miller Medical Sales, Inc. v. Worstell,* 10th Dist. Franklin No. 91 AP-610, 1992 WL 31988 (Feb. 18, 1992); *Try Hours Inc. v. Swartz*, 6th Dist. Lucas No. L-06-1077, 2007-Ohio-1328.

{¶ 38} ITS presented evidence of bank deposits by Star Tax stores operating in the areas covered by the franchise agreements. ITS also presented the testimony of Patrick Rasey, a Certified Public Accountant and the Controller for ITS Financial. He testified that he had reviewed records from Bank of America, including "all the bank statements, signature cards, cancelled check and disbursements from all the accounts presented" for Star Tax Service, as well as for an account for Instant Tax Service with Gebre as signatory on those accounts. Rasey testified regarding both the gross revenues and the net profits realized by the tax businesses operating in the franchise area. Rasey's testimony established a net profit of $374,315.07 by the tax services operating in violation of the court orders. Gebre presented no evidence to rebut this testimony.

{¶ 39} The trial court ordered Gebre and Star Tax to pay the sum of $300,000 to ITS,

leaving a remaining profit of over $74,000 to Gebre and Star Tax. We conclude that it was not an abuse of discretion for the trial court to have ordered the disgorgement of profits realized from the violation of its orders, and not a full disgorgement of those profits at that. We find nothing unconscionable in the sanction awarded; without the availability of disgorgement of profits as a potential sanction for violation of a court's non-compete order, the order might well be toothless.

{¶ 40} Finally, Gebre contends that it was error for the trial court to award sanctions because ITS failed to post the appropriate bond, and because there was a gap between the supersedure of the TRO (which did not require a bond) by the preliminary injunction and the subsequent posting of the $100,000 bond required for the preliminary injunction. Gebre never raised either of these bond issues in the trial court; he may not raise them for the first time on appeal. Furthermore, although the $100,000 bond posted by ITS was incorrectly denominated as a replevin bond, the condition of the bond was that ITS pay all damages resulting from the erroneous entry of the preliminary injunction, which satisfied the purpose of the bond. And if the bond-gap (less than two weeks) had been raised as an issue in the trial court, the trial court could have taken that into consideration in deciding what sanction to issue. This might even have resulted in exactly the same sanction being awarded, since the trial court awarded less than a full disgorgement of the profits realized from the violation of the orders.

{¶ 41} Gebre's Third Assignment of Error is overruled.

## VI. Gebre's Appeal from the Trial Court's Denial of his Motion
## for a Stay of Execution Pending Appeal Is Moot

{¶ 42} Gebre neither assigns error nor otherwise addresses his appeal from the trial

court's denial of his motion for a stay of execution pending appeal. The September 13 order has already been executed, and we granted a stay as to the money damages awarded by the September 19 order, but denied a stay as to the permanent injunction. Based upon these facts we conclude that Gebre's appeal from the trial court's denial of his motion to stay execution pending appeal is moot. Gebre's appeal from that order (CA 25492) is Dismissed.

## VII. Conclusion

{¶ 43} All of Gebre's assignments of error having been overruled, and for the reasons previously set forth herein, the appeal in Case No. 25492 is Dismissed, as moot; and, with respect to Case No. 25416, the September 13, 2012 order of the trial court holding defendants-appellants in contempt and awarding sanctions is Affirmed, and the appeal from the September 19, 2012 judgment of the trial court awarding damages and ordering final injunction is Dismissed, as moot.

. . . . . . . . . . . . .

DONOVAN and HALL, JJ., concur.

Copies mailed to:

James G. Abernathy
Todd E. Bryant
Thomas M. Green
Gregory S. Page
Hon. Frances E. McGee