[Cite as *Goebel v. Colonial Lane Improvement Assn.*, 2025-Ohio-863.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| KURT GOEBEL ET AL. | : | |
| | : | |
| Appellants | : | C.A. No. 30148 |
| | : | |
| v. | : | Trial Court Case No. 2021 CV 04232 |
| | : | |
| COLONIAL LANE IMPROVEMENT | : | (Civil Appeal from Common Pleas |
| ASSOCIATION | : | Court) |
| | : | |
| Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 14, 2025

. . . . . . . . . . .

RICHARD L. CARR, JR., Attorney for Appellants

NICOLE A. MITCHELL and DAVID A. SHEARER, Attorneys for Appellee

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Plaintiffs-Appellants Kurt and Charmaine Goebel appeal from a judgment of the Montgomery County Court of Common Pleas which granted Defendant-Appellee Colonial Lane Improvement Association's motion for a directed verdict on the Goebels' request for injunctive relief. For the reasons that follow, the judgment of the trial court will

be affirmed.

### I. Facts and Procedural History

{¶ 2} The Colonial Lane Improvement Association ("Association") began in 1948 to serve and govern residents who lived on two private roads (Colonial Lane and Little Woods Lane) situated off Far Hills Avenue in the Washington Township/Kettering area. The primary purpose of the Association, which was incorporated as a non-profit in 1967, is to maintain the private roads with the cost split between the 39 homeowners.

{¶ 3} The Goebels became part of the neighborhood and the Association in 1996 when they purchased the home at 79 Colonial Lane. In 2000, they bought an additional, adjacent property, 55 Colonial Lane. They continued to live at 79 Colonial Lane until 2009 or 2011 (the parties present different dates), when they moved into the house at 55 Colonial Lane. Prior to the Goebels' move into 55 Colonial Lane, the property was poorly maintained and was overrun by vegetation, including large amounts of honeysuckle. "[T]he area was covered with honeysuckle. Very dense. It was like a forest." Trial Tr. at 95. There were, however, no reports of flooding at that time.

{¶ 4} In 2009, the Goebels removed the honeysuckle that had overrun the yard of 55 Colonial Lane, and in doing so, they discovered a 30-inch concrete pipe on the north end of their property. The pipe was part of a storm sewer drainage system that streamed water and debris from the surrounding area – including an apartment complex – through their yard, into a metal grate (which was undiscovered until 2011), under Colonial Lane via a 24-inch culvert, through additional smaller pipes running under another neighbor's property, and eventually ending up in a creek.

{¶ 5} Upon removing the honeysuckle, a small portion of the Goebels property at 55 Colonial Lane began experiencing significant flooding when it stormed, as large amounts of water and debris from outside of their property would flow through the 30-inch pipe, run through the swale (drainage ditch) in their yard, and then overwhelm the culvert that went under the road. This caused water to flow over Colonial Lane during significant rainfall. The water issues caused problems with the Goebels' septic system as well, to the point that they were unable to shower or do laundry during a significant rain event.

{¶ 6} The Goebels reached out to the City of Kettering for help. A city employee inspected the property in 2010 or 2011 and discovered a sewer grate buried under inches of dirt and debris. It was dug out and cleared of debris, but the problem was not abated, and the city offered no other assistance. Washington Township stated that it could not help either. As a result, the Goebels hired engineer John Norton to examine the issues. He opined that the pipes and culvert leading from the grate on 55 Colonial Lane were inadequate to handle the flow of water and debris during strong rainstorms. The Association also hired an engineer. He stated that trash and debris covering the grate was causing the flooding and recommended replacing it. He further acknowledged, though, that a detailed study of the area was needed.

{¶ 7} The Association was also asked to remediate the problem, and when it declined, the Goebels filed suit against it alleging trespass, negligence, nuisance, breach of fiduciary duty, breach of R.C. 5312.08, breach of R.C. 5312.13, and defamation. The Association eventually filed a motion for summary judgment in February 2023. The trial court granted the motion for summary judgment as to the defamation claim but denied it

on all the other claims. It did, however, conclude that the Association owed the Goebels a duty to maintain the grate and the culvert.

{¶ 8} The case proceeded to a six-day jury trial in March 2024. The jury heard testimony from the Goebels, neighbors, Association board members, a landscaper, and an engineer. It further considered dozens of exhibits, including pictures and videos of the flooding and the Association's articles of incorporation and bylaws. The jury found in favor of the Goebels on all counts and awarded $25,000 in compensatory damages.

{¶ 9} Following the close of the Goebels' case, the Association made an oral motion for a directed verdict as to the injunctive relief requested by the Goebels. The parties briefed and argued the issue and, on April 19, 2024, the trial court granted the Association's motion for directed verdict, stating that "[i]njuncitve relief is simply not the correct remedy for this request, and therefore is denied." April 19, 2024 Decision and Entry at 5. It reasoned that the Goebels had not been specific in their request, that the court did not have jurisdiction over some necessary parties, and that the Goebels had not sufficiently established all the elements of injunctive relief by clear and convincing evidence.

{¶ 10} The Goebels appeal, raising four inter-connected assignments of error related to the trial court's decision not to grant injunctive relief. We will address them in an order that will help facilitate our analysis.

## II. Injunctive Relief

{¶ 11} In their assignments of error, the Goebels argue that the trial court erred when it determined, for multiple reasons, that injunctive relief was inappropriate in this

case.

**{¶ 12}** Motions for directed verdicts test the legal sufficiency of the evidence, not its weight or witness credibility, and as a result, our review of the trial court's judgment is de novo. *Schafer v. RMS Realty*, 138 Ohio App.3d 244, 257 (2d Dist. 2000). "A directed verdict is proper if, construing the evidence most strongly in favor of the non-moving party, the trial court 'finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party.' " *Mancz v. McHenry*, 2021-Ohio-82, ¶ 44 (2d Dist.), quoting Civ.R. 50(A)(4).

**{¶ 13}** "An injunction provides a party with equitable relief under extraordinary circumstances where there exists no adequate remedy at law." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs*, 65 Ohio St.3d 545, 552 (1992) (Holmes, J. dissenting), citing *Haig v. Ohio State Bd. of Edn.*, 62 Ohio St.3d 507, 510 (1992). "The decision to grant injunctive relief in each case revolves around the particular facts and circumstances and the court's view of the reasonableness of a drastic remedy in each situation." *Martin v. Lake Mohawk Property Owner's Assn.*, 2005-Ohio-7062, ¶ 51 (7th Dist.). For an injunction to issue, it must be demonstrated that injunctive relief is required to "protect a clear right from irreparable injury, where any remedy at law is inadequate." *Spring Valley Invests. v. Rite Aid of Ohio*, 2000 WL 376637, *4 (2d Dist. April 14, 2000), citing 56 Ohio Jurisprudence 3d (1984), Injunctions, Sections 11, 15, 17-18.

**{¶ 14}** There are two types of injunctive relief: mandatory and prohibitory. "A mandatory injunction is an extraordinary remedy." *Id.* It "compels the defendant to restore a party's rights through an affirmative action." *Heartland of Urbana OH, LLC v. McHugh*

*Fuller Law Group, PLLC*, 2016-Ohio-6959, ¶ 87-88 (2d Dist.). Mandatory injunctions remedy past injuries. *Id.* On the other hand, "[a] prohibitory injunction preserves the status quo by enjoining a defendant from performing the challenged acts in the future." *Id.* In other words, the difference is this: a prohibitory injunction prevents future injury, while a mandatory injunction remedies past injury. *Id.*, citing *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 2008-Ohio-1593, ¶ 12.

{¶ 15} We begin our analysis with the Goebels' fourth assignment of error, which argues that the trial court erred when it did not grant the requested permanent injunction because it found they did not meet their burden of proof by clear and convincing evidence.

{¶ 16} To be entitled to injunctive relief, the party must show: (1) the likelihood or probability of success on the merits; (2) whether issuing the injunction will prevent irreparable harm to the plaintiff; (3) what injury to others will be caused by granting the injunction; and (4) whether the public interest will be served by granting the injunction. *TGR Ents., Inc. v. Kozhev*, 2006-Ohio-2915, ¶ 11 (2d Dist.). We review the legal determinations (like the likelihood of success on the merits) de novo, but we will not reverse the trial court's decision as to whether the factors weigh in favor of granting or denying the injunction absent an abuse of discretion. *Columbus v. State,* 2023-Ohio-2858, ¶ 27 (10th Dist.).

{¶ 17} The burden is on the plaintiff to prove his or her case by clear and convincing evidence. *Baker v. Blevins*, 2005-Ohio-3664, ¶ 12 (2d Dist.). "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.

It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *ITS Fin., LLC v. Gebre*, 2014-Ohio-2205, ¶ 23 (2d Dist.).

1. Likelihood of success on the merits

{¶ 18} The first factor revolves around determining whether the Goebels would prevail on the underlying claims of trespass, negligence, nuisance, breach of fiduciary duty, breach of R.C. 5312.08, and breach of R.C. 5312.13. It is important to note at the outset that the jury found in favor of the Goebels on each of these counts at trial, but that is not dispositive here because the burden of proof is elevated from a preponderance of the evidence to clear and convincing evidence, a higher threshold to clear. *See Novy v. Ferrera*, 2014-Ohio-1776, ¶ 57 (11th Dist.).

**Trespass**

{¶ 19} For a party to be successful in a trespass claim, he or she must prove an unlawful entry upon the property of another. *Chance v. BP Chems., Inc.*, 77 Ohio St.3d 17, 23 (1996). In other words, there must be (1) an unauthorized intentional act, and (2) entry on land in another's possession. *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 716 (4th Dist. 1993). In this case, while there is no question that water flowed onto and flooded the Goebels' property, we find little evidence in the record to support the claim that the Association caused it.

{¶ 20} At trial, evidence was introduced that there is a 30-inch pipe outlet where water, debris, and trash come onto the Goebels' property from properties upstream, including an apartment complex. From there, the water (and whatever is in it) flows

through a swale in the front of the yard and into a metal grate. The water goes through the grate, down into a catch basin, and then into a 24-inch pipe which runs under the road. On the other side of the road, on a neighbor's property, there is another grate and catch basin, and a continuation of the 24-inch pipe. At some point on the neighbor's property, the 24-inch pipe transitions into a 15-inch pipe and then into a 10-inch pipe before emptying into a creek at the far edge of that property. While there is some testimony that the 24-inch pipe running under Colonial Lane could be enlarged, the majority of the flooding issues seem to be caused by inadequately small pipes in the neighbor's yard and trash flowing with the water into the Goebel's yard from upstream. According to the bylaws (which require the Association to maintain the grates and culvert), neither of those issues is the responsibility of the Association. Therefore, we do not conclude that the Goebels have met their burden as to trespass.

## Breach of Covenants in violation of R.C. 5312.08

{¶ 21} According to R.C. 5312.08(A), "the owners association is responsible for reasonable maintenance, repair, and replacement of the common elements, and each owner is responsible for maintenance, repair and replacement of the owner's lot and improvements to that, including the dwelling unit and utility lines serving that dwelling unit."

{¶ 22} The Goebels assert that the pipes running under the Corson property, which go from 24 inches to 15 inches, and finally to 10 inches in width, should be considered "common elements." Under R.C. 5312.01(C), "common elements" are defined as "any property in a planned community that the owners' association holds in fee or has

the use of pursuant to a lease or easement," and thus, are the responsibility of the Association.

{¶ 23} The Association's bylaws are silent as to whether the underground stormwater system is a common element and whether it holds a fee in the pipes or an easement. The Goebels, though, argue that because there is evidence that drainage problems were addressed by the Association in 1965, "the entire drainage system serving this development must exist in an easement created either by deed or by prescription." Based on one apparently isolated incident 60 years ago, we cannot jump to that conclusion, especially under the clear and convincing evidence standard.

### Breach of Covenants in violation of R.C. 5312.13

{¶ 24} R.C. 5312.13 states that an owners association shall comply with any covenant, condition, and restriction set forth in any recorded document, and with the bylaws and rules of the owners association. A violation is grounds to commence a civil action for damages, injunctive relief, or both. *Id.* In this case, the trial court concluded before trial that based on the bylaws of the community, the Association owed the Goebels a duty to maintain the grate and the culvert under the road. As the court pointed out, the evidence presented at trial did not establish by clear and convincing evidence that the issues with the flooding were caused by the grates on either side of Colonial Lane or the culvert running beneath it. In fact, it seems the biggest issue comes from outside of the Colonial Lane community altogether. The Goebels' expert testified that the system "plugs up with trash because the community outside of [their] property isn't collecting it, so it winds up in their property and gets caught on that grate." Trial Tr. at 320. He further noted

that there should be netting or mesh on the 30-inch pipe leading into the Goebels' property that would catch the trash and debris coming from the apartment complex. Trial Tr. at 294, 332-333. The evidence strongly suggested that the items the Association was responsible for were not the problem.

**Negligence**

{¶ 25} The Goebels also made a general negligence claim, arguing that the Association's negligence caused damage to their property. To establish an actionable negligence claim, one seeking recovery must show (1) the existence of a duty of care; (2) the breach of the duty; and (3) that as a direct and proximate result of the breach, the plaintiff was injured. *Strother v. Hutchinson,* 67 Ohio St.2d 282, 285 (1981).

{¶ 26} It was established prior to trial that the Association owed a duty to maintain the grate and the culvert, but the Goebels did not prove by clear and convincing evidence that the Association violated that duty. The evidence at trial indicated that the root of the flooding issue was trash, debris, and excess amounts of water flowing from upstream properties. As Norton said, "I mean – to me – that's what the most important observation here is that they're getting a load of trash. . . . And that's why it begins to flood like this." Trial Tr. at 293. There is not clear and convincing evidence that the Association breached its duty to maintain the grate and the culvert.

**Nuisance**

{¶ 27} "Nuisance" is "the wrongful invasion of a legal right or interest." *Taylor v. Cincinnati*, 143 Ohio St. 426, 432 (1944). "Wrongful invasion encompasses the use and enjoyment of property or of personal rights and privileges." *Kramer v. Angel's Path, LLC.*,

2007-Ohio-7099, ¶ 15 (6th Dist.). "[T]he invasion must be either (a) intentional and unreasonable or (b) unintentional but caused by negligent, reckless, or abnormally dangerous conduct. *Id.* at ¶ 17.

{¶ 28} There was no evidence presented that the invasion – flooding – was intentional, reckless, or caused by abnormally dangerous conduct, and we have already concluded that there was not clear and convincing evidence of negligence. Therefore, we cannot say nuisance was proven by clear and convincing evidence.

### Breach of Fiduciary Duty

{¶ 29} Claims for breach of fiduciary duty require proof of: (1) the existence of a duty arising from a fiduciary relationship; (2) failure to observe that duty; and (3) an injury resulting therefrom. *Kademian v. Marger*, 2014-Ohio-4408, ¶ 24 (2d Dist.). A fiduciary duty is defined as " '[a] duty of utmost good faith, trust, confidence, and candor owed by a fiduciary . . . to the beneficiary . . . ; a duty to act with the highest degree of honesty and loyalty toward another person and in the best interests of the other person.' " *In re Trust of Bernard,* 2008-Ohio-4338, ¶ 20 (9th Dist.), quoting *Black's Law Dictionary* (8th Ed. Rev. 2004).

{¶ 30} While caselaw is clear that homeowners associations like Colonial Lane owe fiduciary duties to the residents (*see Behm v. Victory Lane Unit Owners' Assn., Inc*., 133 Ohio App.3d 484, 487 (1st Dist. 1999)), we have already concluded that the Goebels failed to show by clear and convincing evidence that the Association breached its duty, and thus, this claim must fail.

{¶ 31} Because the evidence at trial indicated that the flooding issues were caused

by issues beyond the Association's duty – like excessive trash and water from upstream, and pipes on another person's property -- we cannot conclude that the Goebels, under a clear and convincing evidence standard (which is different and more exacting than what the jury used) would succeed on the merits. This factor weighed against granting the injunction.

### 2. Irreparable Harm

**{¶ 32}** The second prong in the injunctive relief analysis is irreparable harm. " 'Irreparable harm' is an injury for which, after its occurrence, there could be no plain, adequate, and complete remedy at law, and for which money damages would be impossible, difficult, or incomplete." *Columbus*, 2023-Ohio-2858, at ¶ 19 (10th Dist.). It requires proof by clear and convincing evidence of "actual irreparable harm or the existence of an actual threat of such injury." *Clark, Inc. v. Mt. Carmel Health*, 124 Ohio App.3d 308, 315 (10th Dist.1997). Actual irreparable harm must be proven by the movant. *Columbus* at ¶ 19.

**{¶ 33}** Neither party spent much time addressing this factor. The trial court, though, noted that the Goebels testified that the flooding affects about eight percent of their property, making that portion unusable, and that it limits their ability to shower and do laundry during storms. It concluded, however, that "[a]ll of this has monetary value. That is evidenced at least to some degree by the fact that the jury compensated Plaintiffs with a money judgment." April 19, 2024 Decision and Entry at 12. In a footnote, the court opined that "there is also likely a solution to the flooding within Plaintiffs' property that could be accomplished with a damages award."

{¶ 34} After examining the record, especially the evidence and testimony from the trial, we do not believe that irreparable harm would befall the Goebels by the failure to order injunctive relief. It does not appear that the grates and culvert associated with 55 Colonial Lane – the objects the Association is responsible for – are the culprits in the Goebels' flooding issues; the problems seem to be trash and debris from upstream and poorly designed drainage downstream. Based on the Association's duties, the Goebels would likely be in the same position with or without the injunction. It is also true that the monetary award could potentially remedy the upstream issues. This factor does not weigh in favor of granting the injunction.

3. Third Parties

{¶ 35} The third factor in the analysis considers what injury to others will be caused by granting the injunction. This factor seems to favor the Goebels. Under the bylaws, if the injunction were to be granted, the Association would be responsible for the grates on either side of, and the culvert under, Colonial Lane. If it were to expand the culvert from 24 inches to 30 inches, it seems there would be little change to the status quo, as there would still be the issue of narrowing pipes under the Corson property as it flowed to the creek. Even if the Goebels' proposal to overhaul the entire drainage system were adopted, there would not seem to be injury to any third parties. While the work would necessarily involve digging on the Corson property, Richard Corson testified that he would permit work to be done to remediate the problem. Trial Tr. at 488-489.

4. Public Interest

{¶ 36} For the final step in the analysis, the court must consider if the injunctive

relief would be in the public interest. The Association claims that it would not be a benefit to the public for two reasons. First, because the case involves a private lane and its private citizens, the general public is not affected. It also argues that, if the relief were granted and the water stopped flowing off the Goebels' property, it would have to go somewhere and would negatively affect another resident's property. The Goebels believe that "the public" includes Colonial Lane residents and invitees and that everyone would benefit from an improved drainage system.

{¶ 37} We find this factor to be neutral. It makes sense that the "public" in this scenario would be the 39 property owners of the neighborhood, but it is unclear what benefit the residents would enjoy. If the injunction were limited to what the Association is required to maintain under the bylaws, the best-case scenario (although still conjecture) would be decreased flooding across a small portion of the road a few times a year. The expanded injunction that the Goebels want would be of no greater benefit to the public, as it would, in theory, alleviate the flooding from two houses, theirs and the Corsons'.

{¶ 38} After a de novo review of the legal arguments, we must conclude that the trial court did not abuse its discretion when it declined to grant injunctive relief to the Goebels. While our legal analysis was not identical to the lower court's, its decision was not arbitrary, unreasonable, or unconscionable. The fourth assignment of error is overruled. And because this assignment of error is dispositive of the entire appeal, we need not address the merits of the other assignments of error.

### III.     Conclusion

{¶ 39} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

TUCKER, J. and LEWIS, J., concur.